UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EMMET KENNY,

                              Plaintiff,                  **DECISION AND ORDER**
v.                                                       10-CV-1010

MERCANTILE ADJUSTMENT BUREAU, LLC,

                              Defendant.

---

## I. INTRODUCTION

Plaintiff Emmet Kenny commenced this action on December 16, 2010, seeking damages for Defendant Mercantile Adjustment Bureau's ("MAB") alleged violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. ("FDCPA"), and the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. §§ 227, as well as its intentional infliction of emotional distress. Currently before this Court is MAB's Motion for Summary Judgment. (Docket No. 36.) The motion is fully briefed and the Court finds there is no need for oral argument. For the reasons stated below, Defendant's Motion is granted and this case is dismissed.

## II. BACKGROUND

The following facts are undisputed, unless noted otherwise. MAB is a debt collection agency, and this action involves calls it made to Plaintiff's cell phone. Plaintiff, who does not have a home telephone number, obtained the cell phone number at issue approximately eight years ago.

1

Approximately four or five years ago, Plaintiff took his brother-in-law, Lloyd Richards III, to Kenmore Mercy Hospital for treatment. During the admissions process, the hospital required a contact number, so Plaintiff allowed Richards, who did not then have a home or cellular phone, to enter Plaintiff's cell phone number on the hospital admission form. According to Plaintiff, he told the hospital staff: "You can call me if Lloyd's dead or he's dying" and "Don't call me for anything else." Pl's Depo. 34:13-16, 35:13-18.

Over a several year period, both men incurred debts for medical services that were placed with MAB for collections. Two accounts related to Plaintiff, and were placed with MAB by Buffalo Emergency Associates on October 3, 2001 and May 15, 2008, respectively. These accounts are not in dispute. At issue here are phone calls Plaintiff claims to have received in 2010 on twelve MAB accounts involving debts his brother-in-law, Richards, owed to Kenmore Mercy Hospital and Buffalo Emergency Associates.

The first two accounts were placed with MAB by Buffalo Emergency on April 21, 2010. MAB did not initiate any calls to Plaintiff's cell phone regarding these accounts.[1] On September 9, 2010, Richards called MAB and left a message regarding one of the accounts. He requested a return call, and left Plaintiff's cell as the number where he could be reached. MAB returned the call, was told by Plaintiff that it was a wrong number, and it removed Plaintiff's number from both of its Richards accounts.

Buffalo Emergency placed another of Richards' accounts with MAB on May 21,

---

[1] Plaintiff disputes MAB's statements that it did not initiate calls to Plaintiff on these accounts and on two other of Richards' accounts which were placed with MAB by Kenmore Hospital on May 26 and August 3, 2010. MAB has produced its call records for each of these accounts, and Plaintiff does not identify any entries that contradict MAB's statements. Instead, Plaintiff relies on his own testimony that, in total, he received "150 calls, 130-ish, you know, well over a hundred calls" from MAB during the time period at issue. This vague, generalized statement, unsupported by record evidence, is not sufficient to raise a question of fact.

2

2010.  Five calls were placed to Plaintiff's cell number over a 15-day period.  On June 10, 2010, MAB was advised that it was calling a wrong number and it removed the number from this file.

On June 18, 2010, Buffalo Emergency placed two more Richards accounts with MAB.  Plaintiff's cell number, which Richards had given at the hospital, was called once on June 22, 2012. The phone number was removed from these accounts later that same day.  Kenmore Hospital and Buffalo Emergency each placed an account for Richards with MAB on July 19, 2010. MAB placed one call to Plaintiff's cell on August 9, 2012, before removing his number from Richards' accounts on August 12, 2010.

Kenmore Mercy placed another Richards account with MAB on August 19, 2010.  Two dialer calls were made to Plaintiff's cell.  Plaintiff advised MAB, on September 9, 2010, that it was calling a wrong number, at which time his number was removed from the account.

On September 20, Kenmore Mercy placed a new account for Richards with MAB.  Two manual calls were made to Plaintiff's cell.  A short time later, on September 29, 2010, Buffalo Emergency placed another new Richards account with MAB.  Dialer calls were placed to Plaintiff's cell on October 4 and 14, 2010.  Plaintiff advised MAB, on October 14, 2010, that it was calling a wrong number, at which time his number was removed from these final two accounts.

Plaintiff commenced this action on December 16, 2010, alleging that Defendant: (1) violated the FDCPA by intentionally placing repeated calls to harass and annoy him, and by failing to state that they were calling to collect information for Lloyd Richards; (2) violated the TCPA by contacting his cell phone with an automated dialing system and

3

recorded voice without his consent; and (3) intentionally and maliciously inflicted emotional distress on him. MAB has moved for summary judgment.

## III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor*, 609 F.3d at 545. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson*, 477 U.S. at 248), *cert. denied*, 540 U.S. 811, 124 S. Ct. 53, 157 L. Ed. 2d 24 (2003). Further, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003).

**A.    FDCPA Claim**

In his first claim for relief, Plaintiff asserts that MAB violated three provisions of the FDCPA.

**1.    *15 U.S.C. § 1692d(5)***

Section 1692d(5) prohibits a debt collector from engaging "in any conduct the

natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[c]ausing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." "Any call from a debt collector may be presumed to be unwelcome, but that alone is insufficient to constitute a violation of the FDCPA." *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2008 U.S. Dist. LEXIS 16088, 2008 WL 618788, *6 (S.D. Ohio Mar. 3, 2008). "To prevail under § 1692d, the [plaintiff] must show not only that the contents of the calls were harassing, abusive, or misleading, but must also establish the callers' intent." *Id*. (citing *Juras v. Aman Collection Serv., Inc.*, 829 F.2d 739, 741 (9th Cir. 1987), *cert. denied*, 488 U.S. 875, 109 S. Ct. 192, 102 L. Ed. 2d 162 (1988)); *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008).

Courts generally consider the volume and pattern of calls in determining whether there was an intent to annoy or harass. *Hinderliter v. Diverisified Consultants, Inc.*, No. 6:10-CV-1314, 2012 U.S. Dist. LEXIS 127394, 2012 WL 3888148, *2 (N.D.N.Y. Sept. 7, 2012); *Chavious v. CBE Group, Inc.*, No. 10-CV-1293, 2012 U.S. Dist. LEXIS 4362, 2012 WL 113509, *2 (E.D.N.Y. Jan. 13, 2012); *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223, 1229 (D. Kan. 2011). Specifically, "[c]ourts have awarded defendants summary judgment where the volume and pattern of calls demonstrates an intent to contact debtors rather than an intent to annoy, abuse, or harass them." *Chavious*, 2012 U.S. Dist. LEXIS 4362, 2012 WL 113509, *2.

MAB placed a total of fourteen calls to Plaintiff's cell regarding ten different accounts over a five month period. The record is devoid of any indication that it engaged in the type

of intentional, egregious conduct contemplated by the statute. MAB correctly asserts that the volume, frequency, and timing of its calls are insufficient to establish a violation of § 1692d as a matter of law. *See Nigro v. Mercantile Adjustment Bureau, LLC*, No. 10-CV-1037, 2013 U.S. Dist. LEXIS 34178, 2013 WL 951497, at *2 (W.D.N.Y. Mar. 11, 2013) (72 calls over nine months insufficient as matter of law); *Carman*, 782 F. Supp. 2d at 1232 (over 140 calls in two month period insufficient to establish violation where record lacked any evidence of egregious conduct); *Chavious*, 2012 WL 113509, *2 (defendant entitled to summary judgment where 36 calls in less than two months were made at reasonable times and not immediately following another); *Lynch v. Nelson Watson & Assocs., LLC*, No. 10–2025, 2011 WL 2472588, *2 (D.Kan. June 21, 2011) (56 calls in three month period, without more, insufficient to establish violation).

Plaintiff urges that the circumstances here are distinguishable. Because he received calls from MAB after advising, on more than one occasion, that his cell was not a proper phone number for Richards, Plaintiff maintains there is at least a question of fact as to MAB's intent to harass. *Chavious*, 2012 WL 113509, *3 (inference of intent to annoy, abuse or harass is more readily drawn against defendant who repeatedly calls someone after being asked to stop). While the Court agrees there may be cases where an inference of intentional harassment can be drawn from a continuation of calls, a review of the record here reveals this is not such a case.

Each of the accounts placed with MAB for Richards involved treatment at Kenmore Hospital and/or by its emergency department providers, Buffalo Emergency Associates. Plaintiff permitted Richards to give the hospital his cell phone number. The creditors, in

6

turn, gave that number to MAB when they turned Richards' various debts over for collection. There are four documented occasions, each involving a different Richards account, where Plaintiff advised MAB it was calling a wrong number. Each time, MAB immediately removed Plaintiff's number from the subject account and also from any other pending Richards accounts on which Plaintiff's cell number was then listed. Once this occurred, no further calls were made on those accounts. There are four other Richards accounts on which one call was placed before MAB internally corrected its own records and removed Plaintiff's number. No inference of intent to annoy, abuse, or harass can reasonably be drawn in these circumstances. Instead, the evidence merely suggests an intent to establish contact with Richards at the number he provided. When advised on any particular account that Richards could not be reached at that number, MAB made no further attempts to call Plaintiff's cell number in relation to that account. While it appears MAB's internal controls could be improved, its failure to immediately identify and remove an incorrect phone number each time a new account was filed is, at most, negligence.

### 2. *15 U.S.C. § 1692b(1)*

Plaintiff also alleges a violation of § 1692b(1) which provides that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . identify himself [and] state that he is confirming or correcting location information concerning the consumer . . . ." Plaintiff alleges that MAB violated this provision when it failed to state its purpose when calling his cell.

In moving for summary judgment, MAB attests that Kenmore Hospital and Buffalo Emergency gave MAB Plaintiff's cell phone number as the contact number for Richards.

7

DellaMea Aff. ¶ 17. The phone calls it placed were attempts to contact Richards at what it believed was a good number. *Id*. ¶ 16. When informed that it was calling an incorrect number, MAB made no more calls to Plaintiff's cell on the then-pending Richards accounts. *Id*. ¶ 17. MAB then urges that it could not have violated § 1692b(1) because it was not contacting Plaintiff for the purpose of gaining location information about Richards.

Plaintiff contends that, once he had informed MAB that it was calling a wrong number, any subsequent calls to his number on new Richards accounts placed with MAB "would logically be to inquire as to what would be a good contact number for Richards." Pl's MOL at 17. His supposition in this regard is not sufficient to raise a question of fact. Plaintiff did not allege in his Complaint, nor state in his affidavit, that MAB actually made inquiries about Richards' location. Indeed, those documents suggest nothing more than that MAB's calls were attempts to contact Richards directly. Where Defendant has given sworn testimony that is not contested by way of Plaintiff's own sworn testimony or reference to record evidence, his unsupported beliefs are insufficient to raise a question of fact.

3. *15 U.S.C. § 1692c(b)*

The final FDCPA allegations involve § 1692c(b), which prohibits a debt collector from communicating, "in connection with the collection of any debt, with any person other than the consumer" unless the consumer has given his prior consent directly to the debt collector. MAB maintains that Plaintiff does not have standing to bring a claim under this provision, and his allegations must be dismissed as a matter of law.

Generally, "any person" may bring a claim for a violation of the FDCPA. Courts

have held, however, that only a "consumer" has standing to bring a claim under § 1692c. See *Morant v. Miracle Financial, Inc.*, 11-CV-4140, 2012 U.S. Dist. LEXIS 133335, 2012 WL 4174893, at *4 (E.D.N.Y. Sept. 17, 2012) (non-consumer plaintiff lacks standing to sue under 1692c); *Bank v. Pentagroup Fin., LLC*, 2009 U.S. Dist. LEXIS 47985, 2009 WL 1606420, at *4 (E.D.N.Y. 2009) ("Non-consumers lack standing to sue under 1692c."); *Montgomery v. Huntington Bank*, 346 F.3d 693, 696-97 (6th Cir. 2003) ("Only a 'consumer' has standing to sue for violations under 15 U.S.C. § 1692c." (internal quotation marks and citation omitted)); *Frazer v. IPM Corp. of Brevard*, 767 F. Supp. 2d 1369, 1377 ( ) (plaintiff who was neither obligated, nor allegedly obligated to pay debt was not a consumer and did not have standing); *Mathis v. Omnium Worldwide*, No. 04-CV-1614, 2006 U.S. Dist. LEXIS 36963, 2006 WL 1582301, at *4-5 (D. Or. June 4, 2006) (collecting cases), *Kimberly v. Great Lakes Collection Bureau, Inc.*, 91-CV-220,1996 U.S. Dist. LEXIS 22955, 2006 WL 3445714, at *2 (D. Conn. Sept. 26, 1996) (primary purpose of 1692c is to protect the consumer's privacy and employment; therefore, non-consumers do not have standing).

The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay a debt." 15 U.S.C. § 1692a(3). For purposes of § 1692c, the term "consumer" also "includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C. § 1692c(d). Plaintiff does not assert that his relationship with his brother-in-law falls within this definition. He also does not allege that he is obligated to pay the medical debts on which the calls at issue were made, nor that MAB ever alleged he is so obligated. As such, he is not the consumer, and does not have standing to sue under this provision.

9

## B. The TCPA

In his second claim for relief, Plaintiff alleges that MAB violated the TCPA by contacting his cell phone with an automated dialing system and recorded voice without his consent. The statute provides, in pertinent part:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice– . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii).

MAB maintains that it did not violate the TCPA because Plaintiff, by permitting Richards to enter his phone number on the hospital intake form, consented to its calls.

The Federal Communications Commission ("FCC") prescribes and implements regulations governing the TCPA's provisions concerning automated phone calls. See 47 U.S.C. § 229. Previously, the FCC ruled that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992). Subsequently, on January 4, 2008, the FCC adopted Declaratory Ruling 07–232, which further clarified its 1992 ruling:

> [A]utodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a *creditor*, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number

10

regarding the debt.

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564 (F.C.C.2008) (emphasis supplied).

Plaintiff acknowledges that the Court is bound to follow FCC rules and regulations relating to the TCPA, but contends that the rulings cited by Defendant do not apply because: (1) he is not a "consumer" and MAB and its clients are not his "creditors" under the TCPA; (2) he gave limiting instructions regarding the circumstances in which the hospital could call him; and (3) even assuming consent was given, he revoked consent when he called MAB and visited its office.

In support of his first argument, Plaintiff highlights the statement from the 2008 FCC ruling that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor." 23 FCC Rcd. at 564-65. This FCC ruling was issued in response to a petition seeking a categorical exemption for creditors' autodialed or prerecorded calls to consumers; therefore the discussion dealt solely with parties who had a consumer-creditor relationship. 23 F.C.C.R. at 563. There is no basis, however, for drawing an inference that the FCC intended this ruling to limit the application of the prior express consent exemption to parties with a consumer-creditor relationship. Such a conclusion would run afoul of the plain language of the TCPA which exempts any call to a cellular telephone service "made with the prior express consent of *the called party*." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

Here, Plaintiff allowed Richards to enter Plaintiff's cell phone number on a hospital intake form as the number at which Richards could be contacted. Calls initiated for the purpose of reaching Richards on matters relating to his hospital visits were therefore made

11

with Plaintiff's prior express consent.  *See Nigro*, 10-CV-1037, 2013 WL 951497, at *4.

Plaintiff next urges that he gave valid limiting instructions when he told hospital workers to call him only if Richards was "dying or dead." This argument lacks merit. At issue here is MAB's attempts to contact Richards. Plaintiff allowed Richards to use Plaintiff's cell phone number as his own. Even assuming Plaintiff effectively limited the circumstances in which he wished to be called, there is no indication he ever advised the hospital or Richards' treating physicians that they were not to use the number Richards gave on his intake form for the purpose of contacting Richards after his discharge.

Plaintiff's final argument also is rejected. This district repeatedly has held that, where a plaintiff alleges violations of both the FDCPA and TCPA, the facts of the case and whether the calls were made for the purpose of debt collection or telemarketing determine which statute applies for purposes of revoking prior express consent. *See, e.g., Moltz v. Firstsource Advantage, LLC*, No. 08-CV-239, 2011 U.S. Dist. LEXIS 85196, 2011 WL 3360010, at *5-6 (W.D.N.Y. Sept. 15, 2011) (citing *Starkey v. Firstsource Advantage, L.L.C.*, No. 07-CV-662, 2010 U.S. Dist. LEXIS 60955, 2010 WL 2541756, at *6 (W.D.N.Y. Mar. 11, 2010)). Where, as here, there is a default in payment and collection calls are placed to the phone number provided to the creditor, this district has concluded that the provisions of the FDCPA (not the TCPA) govern. Under the FDCPA, written notice is required to halt debt collection calls.

More recently, the Eastern District of New York also has considered the issue of revocation of consent under the TCPA in the context of debt collection calls. *Saunders v. Nco Fin. Sys.*, No. 12-CV-1750, 2012 U.S. Dist. LEXIS 181174, 2012 WL 6644278

12

(E.D.N.Y. Dec. 19, 2012). There, the plaintiff claimed he had effectively revoked consent in letters to Nco. Noting there is some disagreement among district courts as to whether revocation must be written, or can be effected orally, the court rejected both conclusions:

> I see nothing in the TCPA that gives a consumer two bites at the apple. That is, there is no provision in the TCPA, unlike the FDCPA, see 15 U.S.C. § 1692c(c), that allows withdrawal of a voluntarily-given, prior express consent to call a cell phone number.
>
> It is not as if we are dealing with a fundamental constitutional right where a waiver may, under limited circumstances, be withdrawn. *See e.g., Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). This is a narrow statutory right not to receive automated calls on a cellphone. A consumer that voluntarily gives it up need not have an opportunity to change his mind later; he has withdrawn from the protection of the statute.

2012 WL 6644278, at *4-5.

Here, it is undisputed that Richards defaulted on medical bills and that MAB called the number Richards gave to his medical providers in connection with that debt. Thus, under either analysis applied in this Circuit, Plaintiff's argument must be rejected.

**C.     The State Law Claim**

Having disposed of Plaintiffs' federal claims, this Court finds it appropriate to decline to exercise supplemental jurisdiction over the state law claim for intentional infliction of emotional distress. *See* 28 U.S.C. § 1367(c)(3).

The United States Supreme Court has instructed that courts ordinarily should decline to exercise supplemental jurisdiction in the absence of federal claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will

"point towards declining to exercise jurisdiction over the remaining state-law claims"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Second Circuit shares this view; where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003); *see also*, *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."); *Powell v. Gardner*, 891 F.2d 1039, 1047 (2d Cir. 1989) ("in light of proper dismissal of the § 1983 claim against the County, the district court should have declined to exercise pendent jurisdiction over Powell's state-law claims against the County").

Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and will dismiss them pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted in its entirety.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 36) is granted.

FURTHER, that the Clerk of Court shall take all steps necessary to close this case.


SO ORDERED

Dated:      April 29, 2013
              Buffalo, New York

                                                    /s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                                          Chief Judge
                                                United States District Court